# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUTO SISION, INC. et al. : | |
| : | CIVIL ACTION |
| : | NO. 18-5391 |
| v. : | |
| : | |
| WELLS FARGO d/b/a WELLS : | |
| FARGO BANK, N.A. and : | |
| WELLS FARGO d/b/a : | |
| WELLS FARGO & COMPANY : | |



FILED
APR 25 2019
KATE BARKMAN, Clerk
By_____Dep. Clerk

## OPINION

### I. INTRODUCTION

Plaintiffs Auto Sision, Inc. d/b/a Collision Star ("ASI") and George Hudson (together "Plaintiffs") filed this action against Wells Fargo d/b/a Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo d/b/a Wells Fargo & Company (together "Defendants") for violations of 13 Pa C.S.A. § 3420 (Conversion of an Instrument) and 13 Pa. C.S.A. § 3406 (Failure to Use Ordinary Care), or, alternatively, negligence. ECF No. 1. Defendant Wells Fargo moves to dismiss all claims against Wells Fargo & Company because it claims there is no basis for liability of the parent company under these facts; Counts I and II for failure to state a claim; Count III because common law negligence claims are preempted by the Pennsylvania Uniform Commercial Code; and all allegations prior to October 23, 2015 because Defendant argues they are barred by the statute of limitations set forth in 13 Pa. C.S.A. 3118(g). ECF No. 2. Plaintiffs admit in their response that

1

all claims against Wells Fargo & Company and Count III common law negligence against both Defendants must be dismissed. ECF No. 3. Therefore, there remains only Count I, § 3420 Conversion of an Instrument, and Count II, § 3406 Failure to Use Ordinary Care against Wells Fargo. Plaintiffs further admit that the statute of limitations pursuant to 13 Pa. C.S.A. 3118(g) bars any instruments fraudulently indorsed and cleared by Wells Fargo prior to October 23, 2015. ECF No. 3. Thus, the Court considers Counts I and II only with respect to the allegations of fraudulent indorsement after October 23, 2015. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II. BACKGROUND

This matter concerns non-party Barbara Szeliga's alleged misappropriation of Plaintiffs' funds. Plaintiff ASI is a corporation that engages in the business of automotive body repair. ECF No. 1 at ¶ 1. Plaintiff George Hudson is the owner-operator of ASI. *Id.* at ¶ 2. Plaintiffs allege that non-party Albert Buccini founded an automotive body repair business, which he owned and operated until 1997, at which time he pled guilty to two counts of federal income tax evasion. *Id.* at ¶¶ 5-7. During and after Buccini's time as owner of this business, non-party Barbara Szeliga was allegedly employed as the business's bookkeeper. *Id.* at ¶ 9. When this business filed for bankruptcy, Plaintiff George Hudson purchased certain assets of the business out of the bankruptcy proceedings and entered into a five (5)

2

year commercial lease of Buccini's premises for ASI's operation. *Id.* at ¶ 23. Plaintiffs allege that ASI employed Barbara Szeliga as ASI's bookkeeper allegedly based on Buccini's urging. *Id.* at ¶ 25. Plaintiffs allege that Buccini convinced Plaintiffs to hire Szeliga as bookkeeper as part of a scheme to misappropriate Plaintiffs' funds. *Id.* at ¶ 26. "At all times material hereto, . . . Szeliga was solely responsible for the handling of and accounting for . . . ASI's payments from automobile insurers." *Id.* at ¶ 30. Plaintiffs allege that shortly after her hiring, Szeliga "began stealing and/or misappropriating . . . ASI's assets" with Buccini's knowledge and aid, including stealing ASI's accounts receivable checks from insurers payable to ASI. *Id.* at ¶ 31. Szeliga then indorsed the stolen checks in ASI's name and deposited these checks into a Wells Fargo bank account for a company named United Check Cashing ("United"), a check cashing franchise, which was co-owned by Buccini, Buccini's son, and Szeliga.[1] *Id.* at ¶ 19, 32-34.

In "mid to late" 2014, United went out of business, but Szeliga and Buccini did not dissolve AAB nor close United's bank accounts with Wells Fargo. *Id.* ¶¶ 38-39. After United went out of business, the "only moneys deposited into AAB and/or United's unlawful bank accounts were . . . ASI's misappropriated assets."

---

[1] More specifically, Buccini purchased United in 2005 and created a company named AAB, LLC for the purpose of owning United. ECF No. 19. The Complaint alleges that Buccini "placed individual ownership of AAB in" Buccini's son, Anthony, and Szeliga and that AAB stands for "the owners' first names – Albert, Anthony, and Barbara." *Id.*

3

*Id.* at ¶ 41. The Complaint alleges that "[u]pon information and belief, Defendant[] Wells Fargo knew that United has [sic] closed its operations." *Id.* at ¶ 43. Plaintiffs allege that in mid-2016, Plaintiff George Hudson began to suspect that Szeliga was stealing ASI's assets. *Id.* at ¶ 44. Plaintiffs allege that they placed a surveillance camera in ASI's offices and saw Szeliga placing a check in her blouse. *Id.* at ¶ 45. Plaintiffs terminated Szeliga in July 2015 and reported her and Buccini's actions to the Philadelphia Police Department. *Id.* at ¶ 46.

Plaintiffs allege that Wells Fargo violated 13 Pa C.S.A. § 3420 "by obtaining payment with respect to the aforementioned instruments to a person not entitled to enforce the instrument or receive payment, i.e. Non-Parties, Buccini, Szeliga, and/or United." *Id.* at ¶ 50. Plaintiffs further allege that Wells Fargo violated 13 Pa. C.S.A. § 3406 by failing to use ordinary care when it stopped requiring the United account to obtain third-party audits. *Id.* at ¶ 57. Plaintiffs allege that, "[u]pon information and belief," Wells Fargo "requires all cash checking entities that maintain accounts with it to obtain annual third-party audits to ensure that" Wells Fargo "is not accepting forged and/or fraudulent instruments." *Id.* at ¶ 53. Plaintiffs claim that "[u]pon information and belief," Wells Fargo required United to obtain these annual third-party audits until "in or around 2015." *Id.* at ¶ 54. Plaintiffs allege that United stopped operating its business and relinquished its license to operate to the Commonwealth of Pennsylvania in late 2014 but United

continued to maintain its accounts with Wells Fargo and regularly cashed instruments with significant value. *Id.* at ¶ 55. Plaintiffs allege that Wells Fargo failed to use ordinary care in allowing United to continue maintaining its accounts despite having stopped operating its business and in deciding to stop requiring United to obtain annual third-party audits in 2015. *Id.* at ¶ 57. Plaintiffs allege that if Wells Fargo had continued to require third-party audits after 2015, it would have revealed the "illegal scheme." *Id.* at ¶ 58. Plaintiffs allege that Wells Fargo's failure to use ordinary care negatively impacted Plaintiffs because this "illegal scheme continued until Plaintiffs discovered the scheme in mid-2016." *Id.* at ¶ 59.

## III. STANDARD

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 556 U.S. at 675, 129 S. Ct. 1937). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937).

## IV. DISCUSSION

Defendant argues that Counts I and II must be dismissed for failure to state a claim because 13 Pa. C.S.A. § 3405 "places the risk of embezzlement on the employer because it is in the best position to prevent such losses" and thus Wells

Fargo cannot be liable for Plaintiffs' employee's conduct under either § 3420 or § 3406. ECF No. 2-1 at 12. Title 13 Pa. C.S.A. § 3405 states:

> (b) Rights and liabilities. For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. **If the *person* paying the instrument or taking it for value or for collection fails to exercise ordinary care in *paying or taking* the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.**

13 Pa. C.S.A. § 3405(b) (emphasis added)

Defendant claims that because the Complaint alleges that Plaintiffs entrusted Szeliga with the responsibility for the handling of and accounting for instruments received by Plaintiffs for bookkeeping purposes and then fraudulently indorsed the instruments, as required by § 3405, then such an indorsement was effective as if made in the name of Plaintiffs. ECF No. 2-1 at 12. Defendant cites the Third Circuit Court of Appeals in *Menichini v. Grant* to emphasize that the Pennsylvania Uniform Commercial Code "recognizes principals' ability to minimize agency costs and resolves the agency problem by assigning check fraud losses to the payee-employer." 995 F.2d 1224, 1230 (3d Cir. 1993); ECF No. 2-1 at 13. The Third Circuit further held that § 3405 "generally denies an employer the ability to

7

externalize the costs of employee embezzlement, 'virtually creat[ing] a bright line making fraudulent indorsements effective against the employer when employees who have 'responsibility with respect to instruments', forged indorsements.'" *Menichini*, 995 F.2d at 1232; ECF No. 2-1 at 14. Thus, Defendants argue that the Complaint is clear that Szeliga's indorsements of Plaintiffs' checks were effective as if made by Plaintiffs, and thus Wells Fargo cannot be liable under § 3420 and § 3406. ECF No. 2-1 at 14.

In their response, Plaintiffs argued that Szeliga was not provided with the responsibility required by § 3405 to exempt the bank from liability. ECF No. 3. At oral argument, however, Plaintiffs admitted that Szeliga, as bookkeeper, was a responsible party as defined in § 3405(b) but claimed that § 3405(b) did not act as a total bar to liability for Defendant. Transcript of March 7, 2019 Oral Argument, 6:21-24, 6:24-7:1. Plaintiffs argued that, even if Szeliga's indorsement was effective as Plaintiffs' indorsement, the last sentence of § 3405(b) required Wells Fargo to exercise ordinary care in taking that instrument:

> If the **person** paying the instrument or taking it for value or for collection **fails to exercise ordinary care in paying or taking the instrument** and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.
>
> 13 Pa. C.S.A. § 3405(b) (emphasis added)

8

Therefore, Plaintiffs argue that even if Szeliga was a responsible party with respect to the instrument and she made a fraudulent indorsement of that instrument, Wells Fargo did not "exercise ordinary care in . . . taking the instrument and that failure substantially contribute[d] to loss resulting from the fraud." *Id.* Plaintiffs primarily argue that, in failing to require United to conduct third party audits and allowing United's accounts to continue operating after United went out of business, Wells Fargo failed to "exercise ordinary care" as required by § 3405.

Ordinary care is defined in 13 Pa. C.S.A. 3103 as follows:

> In the case of a person engaged in business, [ordinary care] means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, **reasonable commercial standards *do not require the bank to examine the instrument* if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage** not disapproved by this division or Division 4 (relating to bank deposits and collections).
>
> 13 Pa. C.S.A. 3103(a) (emphasis added)

Although § 3405 does require Wells Fargo to exercise ordinary care in taking instruments, the facts as alleged in the Complaint do not support a finding against Wells Fargo here. Plaintiffs' argument that Wells Fargo failed to exercise ordinary care centers around Wells Fargo's purported third-party audit requirement

for check cashing businesses and the fact that it allowed United to continue to maintain operating accounts after United went out of business. ECF No. 3 at 10-11.

However, Plaintiffs' argument challenges the ordinary care of Wells Fargo's auditing policies rather than its policies related to **taking the instrument** and *that* is the focus of § 3405 and the bright line rule established in *Menichini v. Grant*, 995 F.2d 1224 (3D Cir. 1993). Plaintiffs plead no facts showing any reasonable commercial standards that Wells Fargo violated, nor any policy that Wells Fargo contravened in taking the checks and examining them. The procedures regarding auditing check cashing businesses or accounts of non-operating businesses established by Wells Fargo are not the procedures controlling "examin[ing] the instrument" and are irrelevant to the procedures for the ordinary care of "paying," "taking," and "examin[ing]" the instrument at the time of presentation. The instrument presented was, in fact, presented by a responsible party and deposited by a responsible party. Plaintiffs' responsibility for Szeliga's actions are therefore established under 13 Pa. C.S.A. § 3405 and the Third Circuit's bright line rule stated in *Menichini*. Plaintiffs would have us cross this bright line and expand the concept of "ordinary care" in § 3405, defined at § 3103(a), to include an analysis of Wells Fargo's general banking procedures, beyond those procedures relating to the "person" taking or examining the instrument, and the law does not allow for the crossing of this line. Indeed, the statute was established to address this very

circumstance, so as to "den[y] an employer the ability to externalize the costs of employee embezzlement," since the "payee-employer is normally in a better position to prevent fraudulent indorsements by its own employees—through reasonable care in the selection or supervision of employees—than a collecting bank." *Menichini*, 995 F.2d at 1233. Without a showing that Wells Fargo failed to exercise ordinary care in *taking* or *paying* the instrument, Plaintiffs cannot impose its losses based on Szeliga's fraud to Wells Fargo.

The Complaint, therefore, does not allege sufficient factual matter to state a claim for relief that is plausible on its face. Therefore, Defendant's Motion to Dismiss is granted.

## V. CONCLUSION

For the reasons stated above, Defendant Wells Fargo's Motion to Dismiss is hereby granted. The Complaint is dismissed without prejudice.

BY THE COURT:

DATED: 4-25-2019

CHAD F. KENNEY, JUDGE